## UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE AT KNOXVILLE, TENNESSEE

**PAMELA C. PHIBBS,**

       Plaintiff

vs.

                            No. 3:16-cv-00156

**REVENUE RECOVERY**                 (Phillips/Guyton)
**CORPORATION &**
**BUFFALOE & VALLEJO, PLC,**

       Defendants

## AFFIDAVIT OF CHRIS ADAMS IN SUPPORT OF DEFENDANT REVENUE RECOVERY CORPORATION'S MOTION FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| STATE OF TENNESSEE | ) | |
| | ) | ss. |
| COUNTY OF KNOX | ) | |

I, CHRIS ADAMS, after being first duly sworn according to law, depose, affirm, and state as follows:

1. I am a resident of Knoxville, Tennessee and am over the age of eighteen.

2. I have personal knowledge of the facts set forth in this Affidavit and I am competent to testify to the matters stated herein.

3. I am Director of Collection Operations with Revenue Recovery Corporation ("RRC") and I have been employed by RRC for over thirteen years.

4. As RRC's Director of Collection Operations, I have access to information regarding accounts placed for collection with RRC, and I have the ability to search that information.

1

**EXHIBIT**

tabbies

5.     On March 14, 2011, Home Federal Bank of Tennessee ("Home Federal"), one of RRC's clients, placed an account in Plaintiff Pamela C. Phibbs' ("Plaintiff") name[1] with RRC for collection.  A true and accurate copy of the Assignment of Account that RRC received from Home Federal is attached hereto as Exhibit 1; personal identifying information has been redacted to protect privacy.  The Assignment of Account that RRC received from Home Federal is a document that was received and kept by RRC during the normal course of business operations.

6.     When Plaintiff's Home Federal account was placed with RRC, RRC was informed that the account had been charged off on February 1, 2011, and that the balance owed was $35,878.91. *See* Ex. 1.

7.     Because RRC did not receive Plaintiff's Home Federal account electronically, on March 15, 2011, RRC loaded (*i.e.*, input) the information about Plaintiff's Home Federal account into its computer system.

8.     After Plaintiff's Home Federal account was placed with RRC and loaded into RRC's computer system, RRC began collection efforts.  A true and accurate copy of RRC's notes related to Plaintiff's Home Federal account is attached hereto as Exhibit 2; personal identifying information has been redacted to protect privacy.  RRC's notes are taken contemporaneously with any and all collection activity that occurs and are taken and kept during the normal course of business operations.

9.     On March 31, 2011, after Plaintiff's Home Federal account was placed with RRC, RRC discovered that Plaintiff had previously filed for bankruptcy. *See* Ex. 2.  However, RRC did not discover at that time that Plaintiff's Home Federal account had been discharged in connection with Plaintiff's previous bankruptcy case and it believed that Plaintiff's Home

---

[1]     While Home Federal identified Plaintiff as Pamela Nadine Clevenger, RRC later learned during the course of its collection efforts that Plaintiff was now known as Pamela Phibbs.

Federal account was a post-bankruptcy account based on the February 1, 2011, charge-off date provided by Home Federal.

10.     From the date of placement, March 14, 2011, to May 16, 2015, RRC sent five letters to Plaintiff regarding her Home Federal account. *See* Ex. 2. None of those letters were returned to RRC as undeliverable and RRC never received a response from Plaintiff to any of those letters. *Id.* True and accurate copies of the letters that RRC sent to Plaintiff about her Home Federal account are attached hereto as Exhibit 3.

11.     In addition to the five letters that RRC sent to Plaintiff between March 14, 2011, and May 16, 2015, RRC also attempted to reach Plaintiff by telephone. *Id.* Specifically, RRC attempted a total of nine telephone calls to telephone numbers that it believed to belong to Plaintiff between March 14, 2011, and April 20, 2015. *Id.* None of those telephone calls resulted in contact with Plaintiff and some of those telephone calls were to telephone numbers that RRC discovered were disconnected or did not belong to Plaintiff or were an attempt to confirm Plaintiff's employment. *Id.*

12.     Because RRC had not received any response from Plaintiff to any of its letters and had been unable to reach Plaintiff by telephone, on May 27, 2015, Home Federal authorized legal action on the Home Federal account in Plaintiff's name that had been placed with RRC for collection. A true and accurate copy of the Authorization for Legal Action that RRC received from Home Federal is attached hereto as Exhibit 4. The Authorization for Legal Action that RRC received from Home Federal is a document that was received and kept by RRC during the normal course of business operations.

13.     RRC received the Authorization for Legal Action from Home Federal on June 2, 2015. *See* Ex. 2.

14. On August 3, 2015, after RRC had received the Authorization for Legal Action from Home Federal, it forwarded Plaintiff's Home Federal account to the law firm of Buffaloe & Vallejo, PLC for further handling. *Id.*

15. On October 9, 2015, RRC requested that Home Federal provide it with an itemized statement for Plaintiff's Home Federal account, along with copies of any documents signed by Plaintiff. *Id.* A true and accurate copy of the Request for Assistance that RRC sent to Home Federal is attached hereto as Exhibit 5. The Request for Assistance that RRC sent to Home Federal is a document that was created and kept by RRC during the normal course of business operations.

16. On October 29, 2015, RRC received, from Home Federal, an itemization of Plaintiff's Home Federal account, along with copies of the Deed of Trust, Promissory Note, Disclosure Request and Authorization, and Disclosure Statement signed by Plaintiff when she purchased the property commonly known as 2644 Knob Creek Lane, Knoxville, Tennessee, 37912. True and accurate copies of the itemization, Deed of Trust, Promissory Note, Disclosure Request and Authorization, and Disclosure Statement that RRC received from Home Federal are attached hereto as Exhibit 6. These documents that RRC received from Home Federal are document that were received and kept by RRC during the normal course of business operations.

17. After RRC forwarded, to Buffaloe & Vallejo, PLC, the itemization of Plaintiff's Home Federal account, Deed of Trust, Promissory Note, Disclosures Request and Authorization, and Disclosure Statement, suit was filed against Plaintiff on her Home Federal account. *See* Ex. 2.

18. On December 14, 2015, after investigating the information and documentation on file from Home Federal regarding Plaintiff's account, RRC responded to the first of three

4

disputes it received through the credit bureaus regarding Plaintiff's Home Federal account. *Id.* RRC does not have a copy of its response because it not save its electronic responses and copies are no longer available through the credit bureaus.

19.    On February 15, 2016, after re-investigating the information and documentation on file from Home Federal regarding Plaintiff's account, RRC responded to the second of three disputes it received through the credit bureaus regarding Plaintiff's Home Federal account. *Id.* RRC does not have a copy of its response because it does not save its electronic responses and copies are no longer available through the credit bureaus.

20.    On February 29, 2016, after re-investigating the information and documentation on file from Home Federal regarding Plaintiff's account, RRC responded to the third of three disputes it received through the credit bureaus regarding Plaintiff's Home Federal account. *Id.* RRC does not have a copy of its response because it does not save its electronic responses and copies are no longer available through the credit bureaus.

21.    On March 1, 2016, RRC learned that Plaintiff's Home Federal account had been discharged in connection with Plaintiff's previous bankruptcy case. *See* Ex. 2.

22.    On March 7, 2016, RRC corrected its credit reporting due to the new information RRC learned about Plaintiff's Home Federal account being discharged in connection with Plaintiff's previous bankruptcy case. *Id.*

23.    As RRC's Director of Collection Operations, I also have access, along with other management level staff, to RRC's internal written policies and procedures for collections. In this regard, true and accurate copies of RRC's policies and procedures for handling accounts connected to a bankruptcy filing, handling direct consumer disputes, handling indirect consumer disputes, credit reporting and furnishing credit information, and legal action on placed accounts

are attached hereto as Exhibit 7. These documents have been developed by RRC over a period of years and are kept by RRC in the normal course of business operations.

AFFIANT FURTHER SAYETH NAUGHT.

CHRIS ADAMS

SUBSCRIBED AND SWORN to before me this 20 day of March, 2017.


NOTARY PUBLIC

My commission expires: _____

6

# HOME FEDERAL BANK OF TENNESSEE

515 MARKET STREET.
KNOXVILLE, TN 37902

**ASSIGNMENT OF ACCOUNT** RRC

DATE OF ASSIGNMENT  3-14-11

ACCOUNT NO.  00800161Z113   DATE CHARGE OFF  2-1-11

TYPE CHARGEOFF  Consumer Real Estate  CHARGE OFF AMT.  $ _____

DATE LAST PAID/AMT. _____   CURRENT BALANCE  $ 35,878.91

COLLATERAL _____   DISPOSITION _____

MAKER 1: _____ PAMELA NADINE CLEVENGER ▓▓ DOB 60

ADDRESS: 2644 · Knob Creek Ln.

CITY/STATE ZIP  Knoxville Tn 37912

SOCIAL SECURITY NO. ▓▓▓▓▓   RESIDENCE PHONE ▓▓▓ -7653

EMPLOYMENT  Realty Executive   PHONE ▓▓ 3232

PREVIOUS EMPLOYMENT _____ PHONE _____

MAKER 2: _____

ADDRESS: _____

CITY/STATE/ZIP _____

SOCIAL SECURITY: ___ - ___ - ___   RESIDENCE PHONE _____

EMPLOYMENT _____ PHONE _____

PREVIOUS EMPLOYMENT _____ PHONE _____

RELATIVES/FRIENDS
1. _____
2. _____
3. _____

ASSIGNED TO: RRC          ASSIGNED BY: M JOYCE CANNON
                                      VICE PRESIDENT



**EXHIBIT**

1

Pamela Phibbs – Account notes 03/17/11    RENKIM NCOA UPDATE          02:56 FF

03/17/11    2644 KNOB CREEK LN                  02:56 FF

03/17/11    State- TN  Zip- 37912               02:56 FF

03/29/11  94  TEL RES-INVALID RES #             13:05 Dlr

03/30/11 679  ACCT SENT TO TRANS UNION          03:18 NIGHTLY

03/31/11    TU SSN-███████                       00:00

03/31/11    TU DOB - 1960████                   00:00

03/31/11    TU POE-BLUEGREEN                     00:00

03/31/11    TU INFO OCCU SELF-EMPLOYE           00:00

03/31/11    TU EMP VERI.20100205                00:00

03/31/11    TU BANKRUPT                         00:00

03/31/11 685  SCORE 600-624                     08:24 GFL

06/01/11    Credit Reporting - NEW             11:10 CWS

07/07/11 890  DID CHECK FOR MEDICAL COVERAGE    09:28 GCK

09/22/11  94  TEL RES-INVALID RES #             14:50 Dlr

09/22/11  95  INVALID RES #                     14:50 Dlr

01/04/12 533  NO GOVT MED COV                   11:35 CES

03/19/12    Home Ph - ███████-7765              14:17 CMA

03/19/12 145  SKIP

03/19/12 105  TEL RES - DISCONNECTED            14:17 CMA

03/19/12 707  NO PROPERTY IN HER NAME OER COUNTY SITE OR INSIGHT 15:57 CMA

03/19/12 145  FD                               16:00 CMA

04/04/12    Not presented-Time zone            08:20 CGB

04/04/12    Not presented-Time zone            08:58 JTG

06/07/12 262  TEL POE SCTRY WILL HVE DBTR PAGED    16:22 LPC

**EXHIBIT**
2

RRC 1

| | | | | |
|---|---|---|---|---|
| 09/13/12 | 225 | PER OPEATOR NLE | 14:25 CGB | |
| 09/13/12 | | POE- REALTY EXECUTIVE | 14:25 CGB | |
| 09/13/12 | | Work Ph - ███-3232 | 14:25 CGB | |
| 09/13/12 | 556 | SENT LTR | 14:25 CGB | |
| 09/13/12 | 205 | DISC | 14:26 CGB | |
| 09/13/12 | | Work Ph - ███7589 | 14:26 CGB | |
| 02/25/13 | 306 | GLOBAL CONNECT CAMPAIGN | 08:47 CWS | |
| 02/25/13 | 308 | TEL RES-LEFT-TTS MESSAGE | 12:27 GLOBAL | |
| 06/11/13 | | Home#███7653 is cell | 22:37 CWS | |
| 11/18/13 | 89 | REMOVE FROM HOT ACCT QUE | 09:52 CMA | |
| 11/18/13 | 35 | CKD DIR ASST NO HELP | 09:59 CMA | |
| 11/18/13 | 35 | CKD PROP NO HELP | 09:59 CMA | |
| 11/18/13 | 35 | CKD INSIGHT NO HELP | 09:59 CMA | 14:19 CMA |
| 11/18/13 | 35 | CKD ANYWHO NO HELP | 09:59 CMA | |
| 11/18/13 | 35 | CKD TRI-CB NO HELP | 09:59 CMA | |
| 01/27/14 | 102 | CELL. LM ID PAM CLEVENGER | 13:25 KWF | |
| 01/27/14 | 145 | LTR SNT | 13:25 KWF | |
| 02/20/14 | | Attempted-unknown | 09:33 SRL | |
| 02/20/14 | | PO BOX 12602 | 09:33 SRL | |
| 02/20/14 | | KNOXVILLE | 09:33 SRL | |
| 02/20/14 | | TN 379120602 | 09:33 SRL | |
| 03/20/14 | 613 | TEL CELL - NO ANSWER | 09:44 Dlr | |
| 04/20/15 | | Abnormal exit by MCH | 14:17 MCH | |
| 04/20/15 | | PO BOX 12602 | 14:17 MCH | |

RRC 2

04/20/15    State/Zip - TN 379120602                14:17 MCH

04/20/15 709  'NET SHOWS POE # LISTED IS FOR PERS PHONE, NOT BUS 14:18 MCH

04/20/15    Home Ph -    000-0000                14:18 MCH

04/20/15    Work Ph -    ████-7815                14:18 MCH

04/20/15 555  CLEAR                14:19 MCH

04/20/15 701  PROFESS LICENSE DOES SHOW MS IS REALTOR.        14:21 MCH

04/20/15    L/Name - CLEVENGER                14:21 MCH

04/20/15 705  NO SPS FOUND, ALTOUGH SHOWS HER NAME NOW PAMELA C  14:22 MCH


04/20/15 705  PHIBBS AS OF 1.11.12.                14:22 MCH

04/20/15    L/Name - CLEVENGERPHIBBS                14:22 MCH

04/20/15    F/Name - PAMELA NADINE                14:22 MCH

04/20/15 718  PER DDT'S NOTE-CK'D PASSPORT, SHOWS POE IS CONSOLD 14:24 MCH

04/20/15 718  IATED NUCLEAR SECURITY AT LST SINCE 4.1.11 UNDER N 14:24 MCH

04/20/15 718  AME PAMELA C PHIBBS.                14:25 MCH

04/20/15    POE-                14:25 MCH

04/20/15    Work Ph -    000-0000                14:27 MCH

04/20/15 710  LOADED POSS POE E FROM 'NET.                14:27 MCH

04/20/15    Work Ph -    ████-1500                14:29 MCH

04/20/15 230  WRONG POE #-WAS Y-12 FCU #                14:32 MCH

04/20/15    Work Ph -    ████-4931                14:32 MCH

04/20/15    Work Ph -    000-0000                14:33 MCH

04/20/15 710  LOADED POSS POE HR # TO VE.                14:33 MCH

04/20/15 230  TT 'JEANNIE' AT CONSOL NUCL SEC COMPLEX HR, STATED 14:34 MCH

04/20/15 230  NO ONE BY DBTR'S SS# WORKS THERE, MAYBE IS EMPLOY 14:34 MCH

RRC 3

04/20/15 230  ED BY OUTSIDE CONTRACTOR, HOWEVER, INS SHOWS POE.  14:35 MCH

04/20/15 722  PER CMA, SINCE PASSPORT V                14:37 MCH

04/20/15 722  E MS' POE IS CONSOL NUCLE                14:37 MCH


04/20/15 722  AR SECURITY, IS OKAY TO F                14:37 MCH

04/20/15 722  ORWARD FOR SUIT W/ THAT AS VE.           14:37 MCH

04/20/15 290  UNKNOWN                        14:42 MCH

04/20/15 290  FT 4.1.11                  14:42 MCH

04/20/15 290  PER PASSPORT                   14:42 MCH

04/20/15 722  PLS REV FOR LGL.               14:43 MCH

04/20/15 722  Transferred to 24              14:43 MCH

04/20/15 290  VER EMP-CONSIDER SUIT              14:42 MCH

04/20/15     Pri 110740684-121650382          14:49 TVB

04/20/15     Unlinked from 121650382          14:50 TVB

04/20/15 718  OK FOR LGL                 14:50 TVB

04/20/15 718  Transferred to 03            14:50 TVB

04/20/15 505  PLS SEND TO LEGAL.             15:10 MCH

04/20/15 505  REC LGL ACTION                 15:10 MCH

04/20/15 508  Worker changed from 08           15:10 ***

04/20/15 508  Owner changed from 08            15:10 ***

04/20/15 508  RECOMMEND LEGAL ACTION            15:10 MCH

04/23/15 893  FWD DUE TO BAL             14:13 CDJ

04/23/15 893  Worker changed from 59           14:13 ***


04/23/15 893  Owner changed from 59            14:13 ***

RRC 4

05/15/15 191 CH7 DISCHARGED 2008            14:03 BMB

05/15/15 191 APPROVED FOR FWD            14:03 BMB

05/15/15 192 SEND ATTORNEY DEMAND            14:03 BMB

05/16/15      SENT LETTER F1 (S)            00:00 ***

06/02/15 870 LPS RECEIVED-BUFFALO            14:27 KHF

06/02/15 870 LPS RECEIVED-BUFFALO            14:27 KHF

07/04/15      Owner-Split : 59FD-08            10:17 RCM

07/05/15      Owner-Split : TU05-08            19:07 RCM

08/03/15 848 FORWARDED TO BUFFALO            16:12 KHF

08/03/15 848 Worker changed from 59FD            16:12 ***

08/03/15 848 Owner changed from 59FD            16:12 ***

08/04/15      SENT LETTER FL (S)            00:00 ***

08/18/15 852 FWD ATTY ACK ACCT & ASSIGNED FILE #       12:10 BMB

10/01/15 172 ITMZ REQ FOR BMB IN FWD LEGAL       09:50 BMB

10/01/15 172 Worker changed from 58FD       09:50 ***

10/08/15 174 REQ ITMZ            15:05 SDG

10/08/15 174 Smart Code - 174 Cancel            15:05 SDG

10/08/15 174 REQ ITMZ AND SIGNED PAPERWORK       15:06 SDG


10/08/15 174 INFORMATION REQUESTED            15:06 SDG

10/09/15      SENT LETTER BV (S)            00:00 ***

10/29/15 965 SCND ITMZ AND SIGNED CONTRACT--MAILING DOCS TO FWD 15:11 BMB

10/29/15 965 ATTY            15:11 BMB

10/30/15 165 ANSWER TO REQUEST            09:53 SDG

10/30/15 165 REQUEST ANSWERED            09:53 SDG

RRC 5

| | | | |
|---|---|---|---|
| 10/30/15 | 521 | RETURN TO OWNER | 09:53 SDG |
| 10/30/15 | 521 | Worker changed from LP | 09:53 *** |
| 11/16/15 | 877 | EM FWD FOR UPDATE | 08:48 RTF |
| 11/16/15 | 965 | PENDING SUIT | 09:17 RTF |
| 12/07/15 | | COURT COSTS ADJUSTMENT | 09:28 *** |
| 12/07/15 | 900 | COURT COSTS ADDED | 09:28 MAJ |
| 12/14/15 | | Credit Reporting -BALANCE | 09:10 CWS |
| 02/01/16 | 965 | FWD ATTY LTR: SUIT PROC AND FILED IN KNOX CO, PEND 15:18 BMB | |
| 02/01/16 | 965 | ING SVC | 15:18 BMB |
| 02/08/16 | | COURT COSTS ADJUSTMENT | 11:03 *** |
| 02/08/16 | 900 | COURT COSTS ADDED | 11:03 MAJ |
| 02/15/16 | | Credit Reporting -BALANCE | 10:15 TDB |
| 02/23/16 | 883 | UPDATED/VERIFIED E-OSCAR | 10:17 LAP |
| 02/23/16 | 883 | EXCLUSION WORKERS | 10:19 LAP |
| 02/29/16 | | Credit Reporting - DISP | 07:58 TDB |
| 03/01/16 | 883 | UPDATED/VERIFIED E-OSCAR | 14:40 LAP |
| 03/01/16 | 883 | EXCLUSION WORKERS | 14:40 LAP |
| 03/01/16 | 190 | RCVD FWD ATTY LTR-CLOSING FILE FOR CH7 BK | 15:27 BMB |
| 03/01/16 | 846 | CH7 FILED 3/28/08 CASE # 08-31351 | 15:28 BMB |
| 03/01/16 | 190 | | 15:27 *** |
| 03/01/16 | 846 | Worker changed from 58FD | 15:28 *** |
| 03/01/16 | 846 | Owner changed from 58FD | 15:28 *** |
| 03/01/16 | 847 | RECD NOTICE SEE RVI | 15:28 BMB |
| 03/01/16 | 847 | clx -    BMB s847-01 | 15:28 *** |

RRC 6

03/07/16    Credit Reporting - CHP07                 08:23 TDB

04/07/16 632  CORR RECD FROM ATTORNEY                 09:46 PLW

04/07/16 810  I HAVE CLLD JOYCE,SHE IS GOING TO PULL THE ORIGINA 11:16 AEH

04/07/16 810  L CONTRACT FROM ARCHIVE,SHE WILL E/M IT TO ME TODA 11:16 AEH

04/07/16 810  Y                          11:16 AEH

04/07/16 980  RCVD E/M FROM JOYCE,SCND PROMISSORY NOTE AND DEED  12:00 AEH

04/07/16 980  OF TRUST,SCND AS CLNT CORR              12:00 AEH

04/07/16 980  SHE ALSO STATED IN OUR PHONE CONVERSATION THAT THE 12:01 AEH


04/07/16 980  LAST PMT WAS RCVD ON 10/28/10           12:01 AEH

04/07/16 551  BRENT SNYDER FILED LAWSUIT FOR ALLEGED FDCPA VIOLA 15:34 KWF

04/07/16 551  TIONS                      15:34 KWF

04/08/16 196  LM WIT ATTY SEC MAGGIE                  10:36 MRA

04/28/16 196  BRYAN B REQUESTED ALL NOTES AND RECORDINGS      13:09 MRA

RRC 7

612 South Gay Street
P O Box 2698
Knoxville, TN 37901-2698
* PERSONAL AND CONFIDENTIAL *

Revenue Recovery Corporation
Phone (865) 971-3820
   or (800) 221-5071
March 16, 2011

When calling our office, please refer
to account number 01-110740684.

This is an attempt to
collect a debt. Any
information obtained will
be used for that purpose.

0001384    223 24528030         0005

01-110740684
Pamela Nadine Clevenger
PO Box 12602
Knoxville, TN 37912-0602

This communication is from
a debt collector.

Regarding your account with:
HOME FEDERAL BANK OF TENNESSEE

| Client Acct #: | For: | Balance | Date |
|---|---|---|---|
| 008001012113 | REAL ESTATE, CONSUMER | 35,878.91 | 02/01/11 |

Total amount due from all accounts placed this date        35,878.91

THE ABOVE ACCOUNT HAS BEEN LISTED WITH THIS OFFICE FOR COLLECTION.

Our client has referred your account to our professional debt collection
agency for collection. Please remit payment in full in the enclosed
envelope. If you wish to arrange payment by CREDIT CARD or BANK DRAFT
please contact our office at the telephone number listed above.
If you cannot pay the entire amount, please contact our office and we will
see what other options, if any, you may have. We understand your situation
and will work with you. Visit www.rrcinc.com to pay securely on-line.

If paid in full to this office, all collection activity will be stopped
Unless you notify this office within 30 days after receiving this notice
that you dispute the validity of the debt or any portion thereof, this
office will assume this debt is valid. If you notify this office in writing
within 30 days from receiving this notice, this office will: obtain verifi-
cation of the debt or obtain a copy of a judgment and mail you a copy of such
judgment or verification. If you request this office in writing within 30
days after receiving this notice, this office will provide you with the name
and address of the original creditor, if different from the current creditor.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

01-110740684    08    08    1L        March 16, 2011

This collection agency is licensed by
the Collection Service Board of the
Department of Commerce & Insurance.

Total due    35,878.91

A $30.00 service charge will be
added on returned checks.

Pamela Nadine Clevenger
2644 Knob Creek Ln
Knoxville, TN 37912
Email:_____

North Carolina Department
of Insurance Permit #4523

Revenue Recovery Corporation    (1)
P O Box 2698
Knoxville, TN 37901-2698

**EXHIBIT**

3

tabbies

**PLEASE ENCLOSE THIS PORTION WITH YOUR PAYMENT
SEE REVERSE SIDE FOR INSURANCE INFORMATION**

612 South Gay Street
P O Box 2698
Knoxville, TN 37901-2698
* PERSONAL AND CONFIDENTIAL *

Revenue Recovery Corporation
Phone (865) 971-3820
    or (800) 221-5071
March 20, 2012

When calling our office, please refer
to account number 01-110740684.

This is an attempt to
collect a debt. Any
information obtained will
be used for that purpose.

01-110740684
Pamela Nadine Clevenger

PO Box 12602
Knoxville, TN 37912-0602

This communication is from
a debt collector.

Account(s) owed to:
  HOME FEDERAL BANK OF TENNESSEE

Balance due
35,878.91

Total amount due from all accounts          $35,878.91

DEMAND FOR PAYMENT IN FULL

This is a formal demand for payment in full on the above account(s) listed
with this office for collection. Why have you ignored our previous
communications? If you don't make an effort to honor this obligation,
you will give us no choice but to proceed with further collection activity.

Send your payment in full today. Full payment now will stop all collection
activity. VISIT www.rrcinc.com to pay securely on-line.

For your convenience, you may pay by:
  BANK DRAFT or CREDIT CARD by calling our office at the number above
  MONEYGRAM Express Payment- Agent #153867 - Receiver #2999
  WESTERN UNION Quick Collect - Make payable to RRC - Code City ASNA

01-110740684    08    08    FD          March 20, 2012

This collection agency is licensed by        Total due    $35,878.91
the Tennessee Collection Service Board
of the Tennessee Department of Commerce      Pamela Nadine Clevenger
and Insurance
                                             PO Box 12602
North Carolina Department                    Knoxville, TN 37912-0602
of Insurance Permit #4523

                    Revenue Recovery Corporation      (1)
                    P O Box 2698
                    Knoxville, TN 37901-2698

RRC10

7005 Middlebrook Pike
P O Box 50250
Knoxville, TN 37950-0250
* PERSONAL AND CONFIDENTIAL *

When calling our office, please refer
to account number 01-110740684.

01-110740684    08    08
Pamela Nadine Clevenger

PO Box 12602
Knoxville, TN 37912-0602

Revenue Recovery Corporation
Phone (865) 971-3820
   or (800) 221-5071
September 14, 2012

This is an attempt to
collect a debt.  Any
information obtained will
be used for that purpose.

This communication is from
a debt collector.

| Account(s) owed to: | Balance due |
|---|---|
| HOME FEDERAL BANK OF TENNESSEE | 35,878.91 |
| HEALTH VENTURES BILLING | 151.00 |
| KNOXVILLE UTILITIES BOARD | 855.98 |
| | |
| Total due from all accounts | $36,885.89 |

### WE NEED TO COMMUNICATE WITH YOU REGARDING THIS MATTER

Since we have not been able to communicate with you at home, we are
requesting permission to allow us to call you and send mail to your
attention at your place of employment.  If we do not hear from you, we will
assume we have your approval and proceed accordingly.  If you do not respond
to our communications, we will assume it is not your intention to pay this
obligation voluntarily and will proceed with further collection activity.

To ensure proper credit to your account and avoid further collection
activity, your payment should be directed to this office.

For your convenience, you may pay by:
    BANK DRAFT or CREDIT CARD by calling our office at the number above
    MONEYGRAM Express Payment - Agent #153867 - Receiver #2999
    WESTERN UNION Quick Collect - Make payable to RRC - Code City ASNA

01-110740684    08    08    EN

This collection agency is licensed by
the Tennessee Collection Service Board
of the Tennessee Department of Commerce
and Insurance

North Carolina Department
of Insurance Permit #4523

September 14, 2012

Total due    $36,885.89

Pamela Nadine Clevenger

PO Box 12602
Knoxville, TN 37912-0602

VISIT www.rrcinc.com to pay securely on-line

Revenue Recovery Corporation    (1)
P O Box 50250
Knoxville, TN 37950-0250

RRC11

7005 Middlebrook Pike
P O Box 50250
Knoxville, TN 37950-0250
* PERSONAL AND CONFIDENTIAL *

Revenue Recovery Corporation
Phone (865) 971-3820
     or (800) 221-5071
January 28, 2014

When calling our office, please refer
to account number 01-110740684.

This is an attempt to
collect a debt.  Any
information obtained will
be used for that purpose.

01-110740684
Pamela Nadine Clevenger

This communication is from
a debt collector.

PO Box 12602
Knoxville, TN 37912-0602

Account(s) owed to:                                  Balance due
HOME FEDERAL BANK OF TENNESSEE                        35,878.91
HEALTH VENTURES BILLING                                  151.00
FORT SANDERS REGIONAL MEDICAL CENTER                      35.00

Total amount due from all accounts             $36,064.91

        WE HAVE NOT BEEN ABLE TO REACH YOU.  PLEASE CONTACT US!!!

We have tried several times to contact you by mail and/or phone concerning
the above account(s) listed with this office for collection.  However, our
efforts have been unsuccessful in resolving this matter.  If you do not
respond to our attempts to communicate with you, we will assume it is not
your intention to pay this obligation voluntarily and will proceed with
further collection activity.

We can only assist you with this matter if you contact us.  We understand
difficult situations and will work with you to resolve it.  Payment in full
will stop further collection activity and will clear your credit record with
our office.  Call us today.  We can help.  Visit www.rrcinc.com to pay
securely on-line.

01-110740684    08    08    3L              January 28, 2014

This collection agency is licensed by       Total due    $36,064.91
the Tennessee Collection Service Board
of the Tennessee Department of Commerce     Pamela Nadine Clevenger
and Insurance
                                            PO Box 12602
North Carolina Department                   Knoxville, TN 37912-0602
of Insurance Permit #4523

                    Revenue Recovery Corporation        (1)
                    P O Box 50250
                    Knoxville, TN 37950-0250

                                                        RRC12

7005 Middlebrook Pike
P O Box 50250
Knoxville, TN 37950-0250
* PERSONAL AND CONFIDENTIAL *

Revenue Recovery Corporation
Phone (865) 971-1345

May 16, 2015

When calling our office, please refer
to account number 01-110740684.

This is an attempt to
collect a debt. Any
information obtained will
be used for that purpose.

This communication is from
a debt collector.

Pamela C Phibbs

7200 Springvale Lane
Knoxville, TN 37918

Regarding your account with the following client:

Client:        HOME FEDERAL BANK OF TENNESSEE
Balance Due:   $35,878.91

Since you have not resolved the above account listed with this office for
collection, you have left us no alternative but to recommend to our client
that they pursue legal action to recover their account from you. This letter
is to notify you that we have sent a request to our client for a signed
affidavit. Once we receive the affidavit, we will be forwarding your account
to an attorney for the purposes of filing suit against you. This action is
being taken because, despite previous communications requesting payment, you
have failed to make payment in full on this debt.

If a lawsuit is filed against you, it may cause the following consequences:
  1. To defend the lawsuit, it may be necessary for you to appear in
     court.
  2. If a judgment is obtained against you, you may be required to pay
     court charges and post judgment interest.
  3. If a judgment is obtained against you, a garnishment or levy may be
     issued or a lien placed on your peroperty.
  4. A judgment is a matter of public record and can affect your credit.

If paid in full, all collection activity will be stopped. Please contact
our office to make arrangements to pay this obligation.

01-110740684   59FD 59FD  FO              May 16, 2015

This collection agency is licensed by     Total due   $35,878.91
the Tennessee Collection Service Board
of the Tennessee Department of Commerce   Pamela C Phibbs
and Insurance
                                          7200 Springvale Lane
North Carolina Department                 Knoxville, TN 37918
of Insurance Permit #4523

                    Revenue Recovery Corporation        (1)
                    P O Box 50250
                    Knoxville, TN 37950-0250

15-12003



PLAINTIFF'S EXHIBIT

A

May 16, 2015

01-110740684

# AUTHORIZATION FOR LEGAL ACTION

State of    TENNESSEE

County of   KNOX

Creditor:    HOME FEDERAL BANK OF TENNESSEE

VS

Debtor:    PAMELA CLEVENGER PHIBBS

Acct No:    008001012113
Patient:    Consumer Real Estate
Balance:    $35,878.91
Svce Dt:    02/01/11

LIST OF ACCOUNTS ASSOCIATED WITH THIS MATTER

| Account # | Date of Service | Balance |
|---|---|---|
| 008001012113 | 02/01/11 | 35,878.91 |
| | Total Due | $35,878.91 |

The undersigned, creditor or creditor's authorized agent, makes oath based on all personal knowledge that the annexed account is just, due and unpaid.
All lawful offsets, credits and payments have been allowed and the correct balance is shown above for services rendered and/or goods sold and delivered to the debtor or on the debtor's behalf at the debtor's special request.



EXHIBIT

4

Subscribed and sworn to before me this

This is an attempt to collect a debt. Any
information obtained will be used for that purpose.
This communication is from a debt collector.

x M Joyce Cannon  VP
(Creditor or Creditor's agent, sign/print name here)

M. Joyce Cannon
( Print Name)

27th day of May 20

Pamela L. Dill
(Notary Public, sign here)

PAMELA L. DILL
STATE OF TENNESSEE
NOTARY PUBLIC
KNOX COUNTY

F1    59FD

Case 3:16-cv-00156-TWP-HBG   Document 35-7   Filed 03/24/17   Page 20 of 36   PageID #: 385

**Revenue Recovery Corporation**

Client Services Department
P O Box 50250
7005 Middlebrook Pike
Knoxville, TN 37950-0250

Phone    (865) 971-1301
Toll-free  (800) 939-1994
Fax      (865) 342-9402



October 09, 2015

## *REQUEST FOR ASSISTANCE*

HOME FEDERAL BANK OF TENNESSEE
ATTN: JOYCE CANNON  *4
507 MARKET STREET
KNOXVILLE, TN 37902

| | |
|---|---|
| Client Account #: | 008001012113 |
| Date of Service: | 02/01/11 |
| Date Account Placed: | 03/15/11 |
| Responsible Party: | Phibbs, Pamela C |
| Patient Name: | Consumer Real Estate |
| Social Security #: | ▮▮▮▮▮ |
| Original Amount Placed: | 35878.91 |
| RRC Account #: | 01-110740684  58FD LP |
| Current Balance: | 35,878.91 |

Please provide the information needed as checked below:

\_\_\_ Guarantor's social security #.
\_\_\_ Patient's social security #.
\_\_\_ Employment information.
\_*\_ Copy of itemized bill.
\_\_\_ Copy of Explanation of Benefits (EOB).
\_\_\_ Updated balance.
\_\_\_ Debtor says they paid $_____ directly to you with
\_\_\_ check # _____ on _____.
\_\_\_ Insurance Carrier says they paid $_____ directly to you
\_\_\_ with check/remit # _____ on _____.
\_\_\_ Debtor has offered a settlement of $_____. We recommend
\_\_\_ acceptance of this offer and ask that you either approve or
\_\_\_ reject it.
\_\_\_ UB92/HCFA 1500 Form(s)_____
\_*\_ Other assistance as documented below:

    WE NEED AN ITEMIZED STATEMENT AND A COPY OF ANY SIGNED
    PAPERWORK PLEASE. THANKS

EXHIBIT
tabbies
5

**** Please be advised that due to regulations within the Fair Credit Reporting Act (FCRA), all consumer
requests pertaining to their account must be answered within 30 days or the account must be removed
from their credit report. ****

Please forward the requested information along with this sheet to us within seven (7) days so that we can resolve this
account. You may return this form to us via mail or fax it to: (865) 342-9402. **The requested information may also be
sent via email to: clientservices@rrcinc.com.** Please be sure to include the account number along with the requested
information.

Client/Your Reponse

| |
|---|
| |
| |
| |
| |

Signed: _____      Date: _____

RRC14

RECORDATION REQUESTED BY:
Home Federal Bank of Tennessee
PO Box 1230
515 Market Street
Knoxville, TN 37901

WHEN RECORDED MAIL TO:
Home Federal Bank of Tennessee
PO Box 1230
515 Market Street
Knoxville, TN 37901

SEND TAX NOTICES TO:
Pamela N. Clevenger
2644 Knob Creek Lane
Knoxville, TN 37912

OWNER:
Pamela N. Clevenger
2644 Knob Creek Lane
Knoxville, TN 37912

FOR RECORDER'S USE ONLY

This Deed of Trust prepared by:

Name: Janet Caughorn, Loan Assistant
Company: Home Federal Bank of Tennessee
Address: PO Box 1230
City, State, ZIP: Knoxville, TN 37901

## DEED OF TRUST

**MAXIMUM PRINCIPAL INDEBTEDNESS FOR TENNESSEE RECORDING TAX PURPOSES IS $47,500.00.**

**MAXIMUM LIEN. NOTWITHSTANDING THE MAXIMUM PRINCIPAL INDEBTEDNESS STATED HEREIN, GRANTOR HAS THE RIGHT TO REDUCE THE MAXIMUM CREDIT LIMIT SO LONG AS THE REDUCED AMOUNT IS EQUAL TO OR EXCEEDS THE OUTSTANDING BALANCE UNDER THE NOTE AT THE TIME OF SUCH REQUEST.  If Grantor wishes to reduce the limit on the maximum amount of principal indebtedness to be secured under this Deed of Trust, Grantor must send Lender a notice of limitation and, on or before the effective date of the notice, file a copy of the notice for recordation in the appropriate register's office as an amendment to the Deed of Trust.  Lender has the right, upon receipt of such notice, to send Grantor a notice which requires Grantor to return to Lender any checks, credit cards or other access devices.  The maximum limit on the total amount of principal indebtedness secured by this Deed of Trust at any time is $47,500.00.**

THIS DEED OF TRUST is dated April 10, 2006, among Pamela N. Clevenger, Unmarried ("Grantor"); Home Federal Bank of Tennessee, whose address is PO Box 1230, 515 Market Street, Knoxville, TN 37901 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and Investors Trust Company, whose address is 406 Union Avenue, Suite 350, Knoxville, TN 37902 (referred to below as "Trustee").

CONVEYANCE AND GRANT.  For and in consideration of Five Dollars ($5.00) cash in hand paid, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Grantor has bargained and sold, and does hereby bargain, sell, convey and confirm unto the Trustee in trust, with Power of Sale, for the benefit of Lender as Beneficiary, all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Knox County, State of Tennessee:

See Exhibit "A", which is attached to this Deed of Trust and made a part of this Deed of Trust as if fully set forth herein.

The Real Property or its address is commonly known as 2644 Knob Creek Lane, Knoxville, TN 37912. The Real Property tax identification number is 080HN-005.

Grantor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property.  In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE  (A)  PAYMENT OF THE INDEBTEDNESS AND  (B)  PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST.  THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

PAYMENT AND PERFORMANCE.  Except as otherwise provided in this Deed of Trust, Grantor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Grantor's obligations under the Note, this Deed of Trust, and the Related Documents.

POSSESSION AND MAINTENANCE OF THE PROPERTY.  Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

Instr. 200604170005053 Page: 1 OF 9
REC'D FOR REC 04/17/2006 2:49.40PM
RECORD FEE: 140.00
M. TAX: $62.33 T TAX: $0.00

**EXHIBIT**

6

RRC15

**Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Deed of Trust, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such improvements with improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Tennessee law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due, except for the Existing Indebtedness referred to below, and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds $1,000.00. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

Inst# 20060417v0562/26
PAGE. 2 OF 9

-RRC16

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender, together with such other hazard and liability insurance as Lender may reasonably require. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $1,000.00. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Compliance with Existing Indebtedness.** During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Deed of Trust, to the extent compliance with the terms of this Deed of Trust would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Deed of Trust for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.

**LENDER'S EXPENDITURES.** If Grantor fails (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Property, (C) to make repairs to the Property or to comply with any obligation to maintain Existing Indebtedness in good standing as required below, then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Grantor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Grantor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Trustee or Lender under this Deed of Trust, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Promises.** All promises, agreements, and statements Grantor has made in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature and shall remain in full force and effect until such time as Grantor's Indebtedness is paid in full.

**EXISTING INDEBTEDNESS.** The following provisions concerning Existing Indebtedness are a part of this Deed of Trust:

**Existing Lien.** The lien of this Deed of Trust securing the Indebtedness may be secondary and inferior to the lien securing payment of an existing obligation with an account number of 908054182 to Washington Mutual Bank described as: First Mortgage. The existing obligation has a current principal balance of approximately $95,605.00 and is in the original principal amount of $95,000.00. The obligation has the following payment terms: $558.00 per Month. Grantor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness.

**No Modification.** Grantor shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Deed of Trust by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Grantor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Personal Property. In addition to recording this Deed of Trust in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under this Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor shall well and truly pay and perform the obligations at the time and times, and in the manner mentioned in this Deed of Trust, and shall well and truly abide by and comply with each and every term, covenant and condition set forth in this Deed of Trust, then this conveyance shall be and become null and void and the Trustee shall convey the Property to the Grantor by release deed at Grantor's expense.

**EVENTS OF DEFAULT.** At Lender's option, Grantor will be in default under this Deed of Trust if any of the following happen:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Break Other Promises.** Grantor breaks any promise made to Lender or fails to perform promptly at the time and strictly in the manner provided in this Deed of Trust or in any agreement related to this Deed of Trust.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Grantor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**False Statements.** Any representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Grantor, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the Property or any other of Grantor's

Instr: 200603170005260
PAGE: 4 OF 9

property in which Lender has a lien. This includes taking of, garnishing of or levying on Grantor's accounts with Lender. However, if Grantor disputes in good faith whether the claim on which the taking of the Property is based is valid or reasonable, and if Grantor gives Lender written notice of the claim and furnishes Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Insecurity.** Lender in good faith believes itself insecure.

**Existing Indebtedness.** The payment of any installment of principal or any interest on the Existing Indebtedness is not made within the time required by the promissory note evidencing such indebtedness, or a default occurs under the instrument securing such indebtedness and is not cured during any applicable grace period in such instrument, or any suit or other action is commenced to foreclose any existing lien on the Property.

**Right to Cure.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured if Grantor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** All of Lender's rights and remedies will be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of Grantor's obligations under this Deed of Trust, after Grantor's failure to do so, that decision by Lender will not affect Lender's right to declare Grantor in default and to exercise Lender's remedies.

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the same being expressly waived, to declare the entire Indebtedness immediately due and payable, including (if permitted by applicable law) any prepayment penalty for which Grantor may be obligated.

**Foreclosure.** With respect to all or any part of the Real Property, (a) the Trustee, at the Lender's request, shall have the right to enter and take possession of the Real Property and to sell all or part of the Real Property, at public auction, to the highest bidder for cash, free from equity of redemption, and any statutory or common law right of redemption, homestead, dower, marital share, and all other exemptions, after giving notice of the time, place and terms of such sale and of the Real Property to be sold as required by law, or (b) the Trustee or the Lender shall have the right to foreclose by judicial proceeding, in accordance with and to the full extent provided by applicable law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to make application to a court of competent jurisdiction to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property prior to foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or by law.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

To the extent permitted by applicable law, Grantor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

Grantor hereby waives any and all right to have the Property marshalled, the equity of redemption, any statutory or common law right of redemption, homestead, dower, marital share and all other exemptions and other rights which might defeat, reduce or affect the right of the Lender to sell the Real Property or the Personal Property for the collection of the Indebtedness. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph, including but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Trustee shall give notice of sale by public advertisement in the county in which the Property is located for the time and in the manner provided by applicable law, and Lender or Trustee shall mail a copy of the notice of sale to Grantor. Trustee, without demand on Grantor, shall sell the Property at public auction to the highest bidder at the time and under the terms designated in the notice of sale. Lender or its designee may purchase the Property at any sale.

Case 3:16-cv-00156-TWP-HBG   Document 35-7   Filed 03/24/17   Page 26 of 36   PageID #: 391

Trustee shall deliver to the purchaser Trustee's deed conveying that Real Property without any covenant or warranty, express or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. If the Property is sold pursuant to this paragraph, Grantor, or any person holding possession of the Real Property through Grantor, shall immediately surrender possession of the Real Property to the purchaser at the sale. If possession is not surrendered, Grantor or such person shall be a tenant at will of the purchaser and hereby agrees to pay the purchaser the reasonable rental value of the Real Property after sale.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Grantor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Indemnification of Trustee.** Grantor agrees to indemnify Trustee for all reasonable costs, charges, and attorneys' fees incurred by Trustee if Trustee is made a party to or intervenes in any action or proceeding affecting the Property, the title to the Property, or the interest of the Trustee or the Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Grantor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender will have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law. Trustee shall have the authority, in Trustee's discretion, to employ all proper agents and attorneys in the execution of Trustee's duties under this Deed of Trust and to pay for the services rendered by such agents and attorneys out of the proceeds of the sale of the Property. If no sale is made, or if the proceeds of the sale are insufficient to pay such agents and attorneys, then Grantor agrees to pay the cost of such services. The parties in interest hereby waive the necessity of Trustee making oath, filing inventory, or giving bond as security for the execution of this trust, as may be required by the laws of Tennessee.

**Successors and Assigns.** In the event of the death, refusal, or inability for any cause, on the part of Trustee named in this Deed of Trust, or of any successor trustee, to act at any time when action under the foregoing powers and trust may be required, or for any other reason satisfactory to Lender, Lender is authorized, either in Lender's own name or through an attorney or attorneys in fact appointed for that purpose, by written instrument duly registered, to name and appoint a successor or successors to execute this trust, such appointment to be evidenced by writing, duly acknowledged; and when such writing shall have been registered, the substituted trustee named therein shall thereupon be vested with all the right and title, and clothed with all the power of the Trustee named in this Deed of Trust and such like power of substitution shall continue so long as any part of the debt secured by this Deed of Trust remains unpaid.

**NOTICES.** Any notice required to be given under this Deed of Trust, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any person may change his or her address for notices under this Deed of Trust by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors. It will be Grantor's responsibility to tell the others of the notice from Lender.

**ASSOCIATION OF UNIT OWNERS.** The following provisions apply if the Real Property has been submitted to unit ownership law or similar law for the establishment of condominiums or cooperative ownership of the Real Property:

**Power of Attorney.** Grantor grants an irrevocable power of attorney to Lender to vote in Lender's discretion on any matter that may come before the association of unit owners. Lender will have the right to exercise this power of attorney only after Grantor's default; however, Lender may decline to exercise this power as Lender sees fit.

**Insurance.** The insurance as required above may be carried by the association of unit owners on Grantor's behalf, and the proceeds of such insurance may be paid to the association of unit owners for the purpose of repairing or reconstructing the Property. If not so used by the association, such proceeds shall be paid to Lender.

**Default.** Grantor's failure to perform any of the obligations imposed on Grantor by the declaration submitting the Real Property to unit ownership, by the bylaws of the association of unit owners, or by any rules or regulations thereunder, shall be an event of default under this Deed of Trust. If Grantor's interest in the Real Property is a leasehold interest and such property has been submitted to unit ownership, any failure by Grantor to perform any of the obligations imposed on Grantor by the lease of the Real Property from its owner, any default under such lease which might result in termination of the lease as it pertains to the Real Property, or any failure of Grantor as a member of an association of unit owners to take any reasonable action within Grantor's power to prevent a default under such lease by the association of unit owners or by any member of the association shall be an Event of Default under this Deed of Trust.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** What is written in this Deed of Trust and in the Related Documents is Grantor's entire agreement with Lender

Inst: 200584170086268
PAGE: 6 OF 9

RRC20

concerning the matters covered by this Deed of Trust. To be effective, any change or amendment to this Deed of Trust must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law.** This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Tennessee without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of Tennessee.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Knox County, State of Tennessee.

**No Waiver by Lender.** Grantor understands Lender will not give up any of Lender's rights under this Deed of Trust unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean Grantor will not have to comply with the other provisions of this Deed of Trust. Grantor also understands that if Lender does consent to a request, that does not mean that Grantor will not have to get Lender's consent again if the situation happens again. Grantor further understands that just because Lender consents to one or more of Grantor's requests, that does not mean Lender will be required to consent to any of Grantor's future requests. Grantor waives presentment, demand for payment, protest, and notice of dishonor.

**Severability.** If a court finds that any provision of this Deed of Trust is not valid or should not be enforced, that fact by itself will not mean that the rest of this Deed of Trust will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Deed of Trust even if a provision of this Deed of Trust may be found to be invalid or unenforceable.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Grantor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**Waive Jury.** All parties to this Deed of Trust hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**Miscellaneous Waivers.** Grantor waives all right of homestead, equity of redemption, statutory right of redemption, and relinquishes all other rights and exemptions of every kind, including, but not limited to, a statutory right to an elective share in the Property.

**DEFINITIONS.** The following words shall have the following meanings when used in this Deed of Trust:

**Beneficiary.** The word "Beneficiary" means Home Federal Bank of Tennessee, and its successors and assigns.

**Borrower.** The word "Borrower" means Pamela N. Clevenger and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Grantor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., the Hazardous Waste Management Substances Act of 1996, T.C.A., 68-212-201, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Existing Indebtedness.** The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Deed of Trust.

**Grantor.** The word "Grantor" means Pamela N. Clevenger.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Trustee or Lender to enforce Grantor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means Home Federal Bank of Tennessee, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Note.

**Note.** The word "Note" means the promissory note dated April 10, 2006, **in the original principal amount of $47,500.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The maturity date of the Note is April 14, 2016.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions,

Instr #: 200411G060703
PAGE: 7 OF 9

parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Trustee.** The word "Trustee" means Investors Trust Company, whose address is 405 Union Avenue, Suite 350, Knoxville, TN 37902 and any substitute or successor trustees.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND GRANTOR AGREES TO ITS TERMS.

GRANTOR:

X _Pamela N. Clevenger_
     Pamela N. Clevenger

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF ___Tennessee___ }
                              } SS
COUNTY OF ___Knox___ }

Personally appeared before me, ___the undersigned___, a Notary Public in and for said State and County, Pamela N. Clevenger, the within-named bargainor, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who acknowledged that he or she executed the foregoing instrument for the purposes therein contained.

WITNESS my hand and seal at office, on the ___10th___ day of ___April___, 20 _06_.

My Commission Expires: ___10-13-09___         _Janet Caughran_
                                               Notary Public



LASER PRO Lending, Ver. 5.34.00.004 Copr. Harland Financial Solutions, Inc. 1997, 2006. All Rights Reserved. - TN G:\CFI\LPL\G01.FC TR-5270 PR-5

Instr:200604170008260
PAGE: 9 OF 9

RRC22

**EXHIBIT A**

**SITUATED** in District Five (5) of Knox County, Tennessee, and within the 40th Ward of the City of Knoxville, Tennessee, and being known and designated as all of Lot 25, Moss Creek Villas, Unit 5, as shown by map of same of record in Instrument No. 199907120003061, in the Register's Office for Knox County, Tennessee, to which map specific reference is hereby made for a more particular description.

**TOGETHER** with and subject to the rights and obligations in and to the common areas for Moss Creek Villas, as shown on the plat of record aforesaid.

**BEING** the same property conveyed to Pamela N. Clevenger by Eleanor B. Britton a/k/a Mary Eleanor Bolton, Sole Heir at Law of Mary J. Bolton a/k/a Mary Johnson Bolton, deceased; and husband, Danny L. Britton by Warranty Deed dated October 12, 2005, of record in Instrument No. 200510170034257, in the Register's Office for Knox County, Tennessee.

**THIS** conveyance is made subject to applicable restrictions, building set-back line, existing easements, and to all conditions as shown on the recorded map.



RRC23



# Home Federal Bank

**Pamela C. Phipps**

**Account # 8001012113**

| | |
|---|---|
| **Charge Off** | **$32,709.48** |
| **Interest** | 2,342.87 |
| **Late Fees** | 676.56 |
| **Appraisal** | 150.00 |
| **TOTAL** | **$35,878.91** |

515 Market Street
Knoxville, Tennessee 37902-2108
Phone (865) 546-0330

RRC24



# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $47,500.00 | 04-10-2006 | 04-14-2016 | 8001012113 | | | DFB | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  Pamela N. Clevenger (SSN: ▓▓▓▓▓▓▓)
2644 Knob Creek Lane
Knoxville, TN 37912

**Lender:**  Home Federal Bank of Tennessee
PO Box 1230
515 Market Street
Knoxville, TN 37901
(865) 546-0330

---

**Principal Amount: $47,500.00**     **Interest Rate: 7.500%**     **Date of Note: April 10, 2006**

**PROMISE TO PAY.** I ("Borrower") promise to pay to Home Federal Bank of Tennessee ("Lender"), or order, in lawful money of the United States of America, the principal amount of Forty-seven Thousand Five Hundred & 00/100 Dollars ($47,500.00), together with interest at the rate of 7.500% per annum on the unpaid principal balance from April 14, 2006, until paid in full.

**PAYMENT.** I will pay this loan in 120 payments of $563.83 each payment. My first payment is due May 14, 2006, and all subsequent payments are due on the same day of each month after that. My final payment will be due on April 14, 2016, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. Interest on this Note is computed on a 30/360 simple interest basis; that is, with the exception of odd days in the first payment period, monthly interest is calculated by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by a month of 30 days. Interest for the odd days is calculated on the basis of the actual days to the next full month and a 360-day year. I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**PREPAYMENT.** I may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve me of any obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in my making fewer payments. I agree not to send Lender payments marked "paid in full", "without recourse", or similar language. If I send such a payment, Lender may accept it without losing any of Lender's rights under this Note, and I will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Home Federal Bank of Tennessee, PO Box 1230 Knoxville, TN 37901.

**LATE CHARGE.** If a payment is 15 days or more late, I will be charged 5.000% of the unpaid portion of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, Lender, at its option, may, if permitted under applicable law, increase the interest rate on this Note 2.000 percentage points. In no event will the effective total interest rate on this Note be greater than the rate permitted by applicable law.

**DEFAULT.** I will be in default under this Note if any of the following happen:

**Payment Default.** I fail to make any payment when due under this Note.

**Break Other Promises.** I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Note or in any agreement related to this Note, or in any other agreement or loan I have with Lender.

**False Statements.** Any representation or statement made or furnished to Lender by me or on my behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished.

**Death or Insolvency.** Any Borrower dies or becomes insolvent; a receiver is appointed for any part of my property; I make an assignment for the benefit of creditors; or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the property or any other of my property in which Lender has a lien. This includes taking of, garnishing of or levying on my accounts with Lender. However, if I dispute in good faith whether the claim on which the taking of the property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Defective Collateralization.** This Note or any of the related documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Collateral Damage or Loss.** Any collateral securing this Note is lost, stolen, substantially damaged or destroyed and the loss, theft, substantial damage or destruction is not covered by insurance.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if I have not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if I, after receiving written notice from Lender demanding cure of such default: (1) cure the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then I will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if I do not pay. I will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, I also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and I hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or me against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Tennessee without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Tennessee.

**CHOICE OF VENUE.** If there is a lawsuit, I agree upon Lender's request to submit to the jurisdiction of the courts of Knox County, State of Tennessee.

**DISHONORED ITEM FEE.** I will pay a fee to Lender of $27.00 if I make a payment on my loan and the check or preauthorized charge with which I pay is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all my accounts with Lender (whether checking, savings, or some other account). This includes all accounts I may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** I acknowledge this Note is secured by the following collateral described in the security instrument listed herein: a Deed of Trust dated April 10, 2006, to a trustee in favor of Lender on real property located in Knox County, State of Tennessee.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon me, and upon my heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. I and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this

RRC25

endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several. This means that the words "I", "me", and "my" mean each and all of the persons signing below.

PRIOR TO SIGNING THIS NOTE, I READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. I AGREE TO THE TERMS OF THE NOTE.

I ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

_____
Pamela N. Clevenger

LASER PRO Lending, Ver. 5.36.00.004 Copr. Harland Financial Solutions, Inc. 1997, 2008. All Rights Reserved. - TN NLVPRLR\CFI\LPL\D20.FC TR-093 PR-12

RRC26

## DISBURSEMENT REQUEST AND AUTHORIZATION

| Principal | Loan Date | Maturity | Loan No | Call / Col | Account | Officer | Initials |
|-----------|-----------|----------|---------|------------|---------|---------|----------|
| $47,500.00 | 04-10-2006 | 04-14-2016 | 8001012113 | | | DFB | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing " * * * " has been omitted due to text length limitations.

**Borrower:** Pamela N. Clevenger (SSN: ███████)
2644 Knob Creek Lane
Knoxville, TN 37912

**Lender:** Home Federal Bank of Tennessee
PO Box 1230
515 Market Street
Knoxville, TN 37901
(865) 546-0330

---

**LOAN TYPE.** This is a *Fixed Rate (7.500%)* Disclosable Loan to an Individual for $47,500.00 due on April 14, 2016.

**PRIMARY PURPOSE OF LOAN.** The primary purpose of this loan is for:

☒ Personal, Family, or Household Purposes or Personal Investment.

☐ Business (Including Real Estate Investment).

**SPECIFIC PURPOSE.** The specific purpose of this loan is: Payoff existing HF acct +.

**FLOOD INSURANCE.** As reflected on Flood Map No. 475434Q010B dated 05-16-1983, for the community of _____, the property that will secure the loan is not located in an area that has been identified by the Director of the Federal Emergency Management Agency as an area having special flood hazards. Therefore, although flood insurance may be available for the property, no special flood hazard insurance protecting property not located in an area having special flood hazards is required by law for this loan at this time.

**DISBURSEMENT INSTRUCTIONS.** I understand that no loan proceeds will be disbursed until any notice of the right to cancel time period specified has expired and all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $47,500.00 as follows:

| | |
|---|---:|
| Amount paid to me directly: | $3.20 |
| $3.20 Lender's Check # 14554 | |
| Amount paid on my account: | $15,986.74 |
| $15,986.74 Payment on Loan # 8001012057 | |
| Amount paid to others on my behalf: | $31,510.06 |
| $6,976.79 to Lowes | |
| $4,135.27 to Best Buy | |
| $4,398.00 to Bank Card Services/MBNA | |
| $17,000.00 to Euwana Clevenger | |
| | |
| Note Principal: | $47,500.00 |

**TAX CONSEQUENCES.** I understand that Lender makes no representation or warranty whatsoever concerning the tax consequences of this loan, including the deductibility of interest, and that I should consult with my own tax advisor for guidance on this subject. I also agree that Lender shall not be liable in any manner whatsoever should the interest paid on the loan not be deductible.

**FINANCIAL CONDITION.** BY SIGNING THIS AUTHORIZATION, I REPRESENT AND WARRANT TO LENDER THAT THE INFORMATION PROVIDED ABOVE IS TRUE AND CORRECT AND THAT THERE HAS BEEN NO MATERIAL ADVERSE CHANGE IN MY FINANCIAL CONDITION AS DISCLOSED IN MY MOST RECENT FINANCIAL STATEMENT TO LENDER. THIS AUTHORIZATION IS DATED APRIL 10, 2006.

**BORROWER:**

X *Pamela N Clevenger*
Pamela N. Clevenger

---

### CREDIT INSURANCE DISCLOSURE

**VOLUNTARY CREDIT INSURANCE.** CREDIT LIFE INSURANCE, CREDIT DISABILITY INSURANCE AND INVOLUNTARY UNEMPLOYMENT INSURANCE ARE NOT REQUIRED TO OBTAIN CREDIT.

By signing below, I acknowledge that I am not obtaining credit insurance for this loan for one of the following reasons:
(A) I am not eligible for credit insurance;
(B) Credit insurance is not available from Lender; or
(C) If I am eligible and credit insurance is available from Lender, I do not want it.

Prior to signing this Credit Insurance Notice on April 10, 2006, I read and understood all of the provisions of this Disclosure.

**BORROWER:**

X *Pamela N Clevenger*
Pamela N. Clevenger

---

LASER PRO Lending, Ver. 5.30.00.004  Copr. Harland Financial Solutions, Inc. 1997, 2006  All Rights Reserved.  TN M:\CFI\LPL\CPL\PV30.FC  TR-663  PR-13

RRC27



# DISCLOSURE STATEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $47,500.00 | 04-10-2006 | 04-14-2016 | 8001012113 | | | OFB | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

Borrower: **Pamela N. Clevenger (SSN:** [ ] ▮▮▮▮▮ )
2644 Knob Creek Lane
Knoxville, TN 37912

Lender: **Home Federal Bank of Tennessee**
PO Box 1230
515 Market Street
Knoxville, TN 37901
(865) 546-0330

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost me. | Amount Financed The amount of credit provided to me or on my behalf. | Total of Payments The amount I will have paid after I have made all payments as scheduled. |
|---|---|---|---|
| 7.500% | $20,159.60 | $47,500.00 | $67,659.60 |

**PAYMENT SCHEDULE.** My payment schedule will be 120 monthly payments of $563.83 each, beginning May 14, 2006.

**PROPERTY INSURANCE.** I may obtain property insurance from anyone I want that is acceptable to Lender.

**SECURITY.** I am giving a security interest in Real property located at 2644 Knob Creek Lane, Knoxville, TN 37912. In addition, Lender has also reserved a contractual right of setoff in my deposit accounts.

**LATE CHARGE.** If a payment is 15 days or more late, I will be charged 5.000% of the unpaid portion of the regularly scheduled payment.

**PREPAYMENT.** If I pay off early, I will not have to pay a penalty.

I will look at my contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds.

I read and was given a completed copy of this Disclosure Statement on April 10, 2006, prior to signing the Note.

BORROWER:

X *Pamela N Clevenger*
Pamela N. Clevenger

### Amount Financed Itemization

| | |
|---|---|
| Amount paid to me directly:<br>$3.20 Lender's Check # 14554 | $3.20 |
| Amount paid on my account:<br>$15,986.74 Payment on Loan # 8001012057 | $15,986.74 |
| Amount paid to others on my behalf:<br>$5,976.79 to Lowes<br>$4,135.27 to Best Buy<br>$4,398.00 to Bank Card Services/MBNA<br>$17,000.00 to Euwana Clevenger | $31,510.06 |
| Note Principal: | $47,500.00 |
| Prepaid Finance Charges: | $0.00 |
| Amount Financed: | $47,500.00 |

LASER PRO Lending, Ver. 5.30.00.004 Copr. Harland Financial Solutions, Inc. 1997, 2006. All Rights Reserved. - TN M-I\FPS\LPL\C70\LFC970.FC TR-683 PR-27

RRC28

# Materials comprising Exhibit 7 withheld pending Order allowing filing under seal.